**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rose Ann Karam, | No. CV-18-00455-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| University of Arizona, et al., | |
| Defendants. | |

Pending before the Court are several motions to dismiss by (1) Defendants Southern Arizona Veterans Administration Health Care System ("VA") and United States Air Force, Davis Monthan Air Force Base ("DMAFB") (collectively "Federal Defendants") (Doc. 121); (2) Defendant Banner University Medical Center ("Banner") (Doc. 105); Defendant Genoa Healthcare, LLC ("Genoa") (Doc. 117); and Defendant Arizona Board of Regents ("ABOR") (Doc. 99). Also pending is ABOR's Motion to Strike Plaintiff's Objection to ABOR's Reply. (Doc. 115.) The Court will address each motion in turn.

## 1. STANDARD OF REVIEW

A motion under 12(b)(6) must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. But the complaint must contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. So, although a plaintiff's specific factual allegations may be consistent with a federal cause of action, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id*. at 681.

Complaints drafted by pro se litigants are held to less stringent standards than complaints formally filed by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). But, to avoid dismissal, even a pro se plaintiff must provide a legal theory that is cognizable and allege sufficient facts to support a cognizable legal theory. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

## 2. FEDERAL DEFENDANTS' MOTION TO DISMISS

Plaintiff appears to raise claims of intentional infliction of emotional distress ("IIED"), defamation, civil conspiracy, discrimination, retaliation, and hostile environment against Federal Defendants. Federal Defendants ask the Court to dismiss these claims for lack of subject matter jurisdiction and failure to state a claim.

### a. Subject Matter Jurisdiction and Factual v. Facial Attacks

There are two types of challenges to subject matter jurisdiction: factual and facial. A facial attack challenges the sufficiency of the factual allegations in the complaint, arguing that the facts as pled do not give rise to subject matter jurisdiction in federal court. *Courthouse News Service v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014). In a facial attack the court may not look at evidence outside the complaint and must take the non-moving parties' allegations as true. *Id*.

A factual attack challenges "the truth of the allegations contained in a complaint

that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the court may look at evidence outside of the complaint to decide the motion to dismiss without converting it into a motion for summary judgment. *Id.* Moreover, in this form of attack, the reviewing court need not take the Plaintiff's allegations as true. *Id.* If the party challenging jurisdiction presents evidence that demonstrates the court's lack of jurisdiction, then the non-movant must produce evidence that subject matter jurisdiction does, in fact, exist. *Id.*

Federal Defendants raise a facial attack because they question the sufficiency of the factual allegations–they claim that the facts are too vague to raise subject matter jurisdiction. In addition, they argue that Plaintiff's allegations must be brought under either the Federal Tort Claims Act ("FTCA") or the Rehabilitation Act ("RA"), not under the statutes addressing discrimination. They argue that the statutes Plaintiff believes are applicable–42 U.S.C. § 2000d and 29 U.S.C. § 794–do not provide an independent cause of action, but merely describe prohibited conduct. Under the FTCA, they argue, Plaintiff must first exhaust her administrative remedies before the court can exercise jurisdiction over her claims. Since Plaintiff has not shown exhaustion, her tort claims of IIED and defamation are precluded and are now time barred. Moreover, Federal Defendants assert that under the FTCA, Plaintiff's claims are precluded because Federal Defendants enjoy sovereign immunity. Finally, Federal Defendants assert that the civil conspiracy claim under the RA fails because it seeks money damages and the government has not waived sovereign immunity. *See Lane v. Pena*, 518 U.S. 187, 197 (1996).

The Court will treat the matter as a facial attack and views the facts in the light most favorable to Plaintiff.

Plaintiff argues that her claims are focused on civil conspiracy and retaliation under Section 504 of the RA and are not precluded because the RA does not require exhaustion of remedies. Furthermore, she asserts that the civil conspiracy claim is inextricably intertwined with the IIED and defamation claims, which should not be evaluated as individual torts under the FTCA. Rather, the tort claims should be

considered part and parcel of the federal discrimination and retaliation claims. She cites no case law requiring such consolidation. The Court finds Plaintiff must plead facts supporting the elements of each claim, but for the reasons set forth below, Plaintiff's individual claims fail.

### a. IIED and Defamation

The FTCA "is the exclusive remedy for tortious conduct by the United States." *Fed. Deposit Ins. Corp. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998); 28 U.S.C. § 2679. Under the FTCA, liability may be imposed "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also United States. v. Olsen,* 546 U.S. 43, 44 (2005). However, it is a claimant's burden to show that the United State has waived its immunity against the claims presented. *See Prescott. v. United States*, 973 F.2d 696, 701 (9th Cir. 1992). Furthermore, a district court lacks jurisdiction to consider an FTCA claim unless the claimant has first exhausted the administrative remedies available to him or her. 28 U.S.C. § 2675(a); *D.L. ex rel. Junio v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2017); *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000).

Both parties agree that Federal Defendants are governmental entities. As such, any tort claims against them must be brought under the FTCA. *See* 28 U.S.C. § 2679(b)(1). This includes Plaintiff's IIED and defamation claims, regardless of whether the underlying facts for the torts also support Plaintiff's alleged discrimination, retaliation, or hostile environment claims.

First, Plaintiff has not met her burden of showing that the government has waived its sovereign immunity as to these claims. Second, Plaintiff does not claim she exhausted her administrative remedies, but merely states that exhaustion is not required. Since the tort allegations must be raised under the FTCA they require exhaustion. Because she has not exhausted her administrative remedies and the time to exhaust these claims has now expired, these claims shall be dismissed with prejudice.

### b. Civil Conspiracy

Conspiracy in Arizona "requires that two or more individuals agree and thereupon accomplish 'an underlying tort which the alleged conspirators agree to commit.'" *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 37 (Ariz. 2002) (quoting *Baker v. Stewart Title & Trust of Phoenix*, 5 P.3d 249, 256 (Ariz. Ct. App. 2000)). Likewise, civil conspiracy under 42 U.S.C. § 1985(c) requires "the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance of the conspiracy; and a resulting injury." *Scott v. Ross¸* 140 F.3d 1275, 1284 (9th Cir. 1998); *United Bhd. of Carpenters and Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983). Plaintiff has raised neither a state nor a federal claim of civil conspiracy.

Although difficult to follow, Plaintiff's allegations against Federal Defendants are as follows. Plaintiff is a pharmacy student at the University of Arizona ("U of A"). She has "a documented learning disability including a processing disorder which delays/prolongs writing" as well as Attention Deficit Hyperactivity Disorder ("ADHD"). (Doc. 74 at 2.) Based on these disabilities, she was permitted an accommodation that allows her (1) to take tests "with minimal distraction or headphones," and (2) to receive time and a half for testing. *Id.*

Plaintiff participated in student rotations at the VA and DMAFB. At the VA, Plaintiff claims she was given extra assignments, had her schedule and assignments changed without warning, and had her work misrepresented. Staff made "snide remarks, avoid[ed] eye contact," and "ignor[ed] her." She says Dr. Tara Evenko[1] did not prepare Plaintiff adequately for her VA rotation and criticized Plaintiff no matter what she did. In addition, she was forced to be the first presenter in a class of students when she preferred to present last because she had a fear of public speaking. She was provided confusing and contradictory instructions. Finally, she claims the environment at the VA was "subtly hostile if not abusive," but does not explain how. (Doc. 74-1 at 3.) Ultimately, she

---

[1] It is unclear whether Dr. Evenko is a VA employee or a U of A employee. She is simply listed as the preceptor during Plaintiff's VA rotation.

received a C in this rotation.

During her rotation at DMAFB, Plaintiff was supposed to engage in "cough and cold visits" but after the first two weeks Louis Feldman[2] stopped asking her to participate. Again, individuals ignored and avoided Plaintiff. Employees or teachers at DMAFB did not adequately communicate with Plaintiff about her rotations and assignments and were irritated with her. She believes her final evaluation was altered when DMAFB thought she might pursue litigation but provides no details as to how it was altered or why she believed an alteration was motivated by her possible litigation. She does not allege that her grades suffered or posit any adverse action.

These allegations do not support a claim a civil conspiracy. There are no facts that could lead a reasonable jury to conclude that Federal Defendants worked together with others to discriminate against her or to commit a tort against her. Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action, *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Conspiracy requires an agreement between two or more people. It is impossible to determine with whom Federal Defendants conspired, what they conspired to do, or how Plaintiff was injured. In addition, there is no indication that Federal Defendants knew of her disability. Without any factual support, the Court cannot infer that Federal Defendants conspired with any other defendant to coordinate a concerted effort to defame, inflict emotional distress, discriminate, or retaliate. The Court will dismiss the civil conspiracy claim against Federal Defendants.

### c. Discrimination, Retaliation, and Hostile Environment

As the Court originally informed Plaintiff in the initial screening order:

> Discrimination under the Rehabilitation Act and Title II of the ADA requires reasonable accommodations for people with disabilities. *See* 34 C.F.R. §104.44(a); 28 C.F.R. §35.130(b)(7). A prima facie case under

---

[2] Again, the Court is unsure who Louis Feldman is; whether a DMAFB employee, a U of A instructor, or a fellow student.

either Title II of the ADA or the Rehabilitation Act must show that (1) the claimant is disabled; (2) she is otherwise qualified, even absent the accommodation; (3) she was excluded from the services desired because of her disability; and (4) that the program in question "receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim)[.]" *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 (9th Cir. 1999); 29 U.S.C. § 794(a); 34 C.F.R. §§ 104.3(l)(3), 104.4(a).

In addition to requiring pleading of the aforementioned elements, monetary relief in a Title II ADA or Rehabilitation Act claim may only be rewarded if the plaintiff can show deliberate indifference–meaning a defendant was aware of specific accommodations that were requested wherein a denial of that request was likely to result in a denial of a federally protected right, and the defendant failed to act. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).

(Doc. 12 at 8) (citations omitted). Moreover, while typically retaliation is raised in employment discrimination claims "rather than discrimination in public services under Title II, the ADA's retaliation provision applies to both titles." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). To state a claim of retaliation, a claimant must plead facts demonstrating "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *Id.*

Insofar as Plaintiff is attempting to raise claims of discrimination and retaliation, she has not explained how or why she believes that Federal Defendants inattention to her needs as a student was a result of discrimination based on her disability. There are no claims that Federal Defendants were ever made aware of her disability. Nor has she demonstrated how any alleged discrimination resulted in injury. Being unprepared, spoken to harshly, ignored, forced to present first, and losing sleep (during a medical rotation) do not constitute an injury. There is also no connection made between the accommodations she claims she was guaranteed (additional time and limited distractions) and her treatment during rotations.

Furthermore, eye-rolling and avoidance may be hurtful to Plaintiff's feelings, but

do not create a hostile learning environment. *See, e.g.*, *Kortan v. Calif. Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000) (plaintiff who alleged supervisor mailed postcards to her home, stated females are "castrating bitches," and called the plaintiff "Medea," did not raise a hostile work environment claim); *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (plaintiff who alleged coworkers made racist remarks, called him "China man," and "pulled their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians" did not create a hostile work environment); *but see Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1163 (9th Cir. 2017) (employer who sided with plaintiff's alleged rapist raised sufficient hostility to withstand summary judgment).

### d. Conclusion

The Court has no jurisdiction over Plaintiff's claims of IIED and defamation because Plaintiff failed to exhaust her administrative remedies. In addition, Plaintiff has failed to raise viable claims of civil conspiracy, discrimination, retaliation, or hostile environment, despite the Court's initial screening and two opportunities to amend. Repeated failure to cure deficiencies is one factor to be considered when deciding whether justice requires granting leave to amend. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). In fact, the Court's discretion to deny leave to amend is particularly broad where a plaintiff has previously been permitted to amend her complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Plaintiff has not provided the Court with a reason to believe that amendment would cure the deficiencies. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("[A] district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally."). Therefore, the Court will dismiss all claims against Federal Defendants with prejudice.

///

///

///

### 3. BANNER'S MOTION TO DISMISS

Plaintiff raises similar claims of IIED, defamation, civil conspiracy, discrimination, retaliation, and hostile environment against Banner for conduct that occurred during an adult psychiatric rotation at the hospital. From the Second Amended Complaint, Plaintiff alleges that five days into a rotation at Banner, Plaintiff failed the class after staff accused her of being late repeatedly, falling asleep during a lecture, and had behaving unprofessionally in response to feedback.

The alleged unprofessional behavior occurred when U of A preceptor, Nina Vadiei, questioned Plaintiff on the topic of antisocial personality disorder. When Plaintiff did not provide the correct answer, Vadiei became irritated and told Plaintiff she was not prepared. After the discussion escalated, Vadiei informed Plaintiff they should take a break, cool off, and reconvene after lunch. When Plaintiff returned, a Banner employee named Jane provided a DSM V manual to Plaintiff. Then Vadiei texted Plaintiff telling her to go home and they would continue their discussion later. Plaintiff did not get the opportunity, however, because Vadiei immediately reported the incident and Plaintiff was removed from the rotation.

Plaintiff was subsequently given a summary of the encounter with Vadiei, which stated that Plaintiff was defensive, argumentative, and rolled her eyes. The summary explained that Plaintiff had been removed from the rotation because she was demonstrating "unprofessional behavior (the repeated tardiness, falling asleep in small meeting and the heated verbal discussion)." (Doc. 74-1 at 10.)

Plaintiff admits that in that first week, she believed someone was breaking into her home and therefore her "sleep . . . and punctuality had been impaired." (Doc. 74-1 at 11.) She also concedes she nodded off in a lecture. In addition, of the four documented instances of tardiness, Plaintiff believes a Banner employee erroneously recorded her arrival time on November 1, 2018 and claims that, at worst, she was late two days.

So, only two actions are attributed directly to Banner: providing a DSM V manual to Plaintiff and falsely recording one instance of tardiness. Providing Plaintiff with the

DSM V manual was not discriminatory nor does the action support any of Plaintiff's claims. Therefore, the Court will not address it. Furthermore, a reasonable juror cannot conclude that one reported instance of tardiness by an unknown Banner employee could be connected to a conspiracy, be intended to cause emotional distress, to defame, to discriminate, or to retaliate, especially given her concession about punctuality.

However, Plaintiff's response to Banner's Motion to Dismiss attempts to attribute the actions of Vadiei to Banner as well. Assuming without deciding that Vadiei's actions can be attributed to Banner, the Court finds that Plaintiff's claims against Banner still fail.

### a. IIED

"Under Arizona law, a plaintiff alleging the intentional infliction of emotional distress must plead and prove that: (1) the defendant's actions were extreme and outrageous, (2) the defendant either intended to cause emotional distress or acted in reckless disregard of that result, and (3) severe emotional distress in fact occurred." *Gasho v. United States*, 39 F.3d 1432, 1171 (9th Cir. 1994). For conduct to be deemed extreme and outrageous, it must "go beyond all possible bounds of decency, and [] be regarded as atrocious, and utterly intolerable in a civilized community." *Ford v. Revlon, Inc.,* 734 P.2d 580, 585 (Ariz. 1987).

The Court cannot find that Banner or Vadiei's actions were extreme and outrageous, were intended to create emotional distress, or were in reckless disregard of possible distress. Plaintiff merely states that she believed Vadiei "tried to bait the Plaintiff into an argument." (Doc. 74-1.) There is nothing in the alleged conversation with Vaidei that strikes the Court as outrageous. If district courts found that every incidence of irritation, disagreement, or heated argument constituted IIED, it would result in the elimination of public discourse. This the Court will not abide. Nor can the Court find that incorrectly recording Plaintiff as late is atrocious behavior. Plaintiff has not pleaded facts supporting her IIED claim, nor has she shown that amendment would prove to be anything other than futile. The Court dismisses this claim with prejudice.

///

### b. Defamation

Defamation of a private person requires that a plaintiff plead facts showing the defendant made a false statement "(a) know[ing] the statement is false and that it defames the other, (b) act[ing] in reckless disregard of these matters, or (c) act[ing] negligently in failing to ascertain them." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 449 (Ariz. Ct. App. 2015) (citing Restatement (Second) of Torts § 580B). "To be defamatory, a publication must be false *and* must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin*, 848 P.2d 286, 288-89 (Ariz. 1993) (emphasis added).

The Court cannot discern what comments Plaintiff believes are defamatory, and noting Plaintiff was late, defensive, argumentative, and rolled her eyes simply does not defame Plaintiff. The written observation that Plaintiff exhibited unprofessional behavior because she was dozing off, tardy, and engaged in heated discussions are not disparaging characterizations meant to elicit ridicule or question Plaintiff's virtue. At most they can be construed as inaccurate factual allegations, though Plaintiff admits she may have nodded off and may have been repeatedly late. Plaintiff has failed to raise any facts that support her defamation claim and has not shown amendment would resolve the deficiency. The Court dismisses this claim with prejudice.

### c. Civil Conspiracy

Plaintiff has provided no factual allegations that would lead a reasonable juror to believe that Banner employees knew about Plaintiff's disability and worked with others to conspire against Plaintiff because of the disability. Although Plaintiff's response to the Motion to Dismiss claims that Plaintiff had already filed a discrimination claim against the U of A, there are no factual allegations suggesting Banner employees knew of the filing. A bald assertion of conspiracy does not suffice. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (claims must be more than speculative). And, as explained above, Banner committed no torts and nothing suggests it conspired to commit a tort, therefore a civil conspiracy charge is unsupported.

### d. Discrimination, Retaliation, and Hostile Environment

Like the allegations against Federal Defendants, Plaintiff has proffered no evidence permitting a reasonable juror to conclude that her disability motivated Banner's actions–either directly or circumstantially. Nor has she shown that Banner acted in retaliation for her filing a complaint against the U of A for denying her accommodations. In fact, there is no evidence that Banner knew of Plaintiff's disability or her allegations against the school. *See Dodson v. Cartwright Elementary Sch. Dist.*, No. CV-15-00674-PHX-DLR, 2016 WL 3437602, at *7 (D. Ariz. Mar. 25, 2016) (an ADA claim that does not demonstrate defendant's knowledge of plaintiff's protected activity fails). The more likely explanation, as Plaintiff explained in the Second Amended Complaint, is that in the first five days of the rotation her loss of sleep affected her punctuality, attentiveness, and mood. Finally, Banner's alleged actions do not raise to the level of creating a hostile environment and there is no reason to believe that there are additional facts that could be asserted to support this claim.

### e. Conclusion

Plaintiff has had multiple opportunities to amend, and perfunctorily added Banner in the Second Amended Complaint. Instead of including facts that would suggest that her disability was a motivating factor in her dismissal from her rotation at Banner, she merely claims that there are more "material facts" she could add. This will not suffice. *See Sisseton-Wahpeton Sioux Tribe*, 90 F.3d at 355. The Court will dismiss Banner with prejudice.

## 4. DEFENDANT GENOA HEALTHCARE, LLC'S MOTION TO DISMISS

Although Genoa believes Plaintiff only raises claims of IIED and civil conspiracy, Plaintiff seems to also assert defamation, discrimination, retaliation, and hostile environment. The Court will therefore address them but finds that none of the allegations state a claim for which relief may be granted.

Plaintiff's allegations against Genoa appear to state she was discriminated against because of her disability because she (1) was offered Oreos but not bagels, (2) was not

given the same Olive Garden lunch that was provided to staff, (2) was not allowed to eat in the employee lunch room during her student rotation, (3) was prevented from working her preferred rotation and instead placed in Medication Therapy Management too often, (4) was criticized for documenting her complaints in writing, and (5) was told to look up answers prior to asking questions of instructors. She also claims that she was temporarily informed that her belongings should be left in her car, but after she told a Genoa pharmacist that she had limited function in her arm, she was permitted to keep her belongings in the same area as staff. She does not describe any adverse actions directly resulting from Genoa's alleged actions.

### a. IIED

There are no alleged facts in the Second Amended Complaint that suggest that Genoa's actions were extreme and outrageous, intended to cause emotional distress, or that emotional distress occurred. Most individuals at some point in time believe they have been subject to unfounded criticism; criticism is not a reprehensible act in our society. Plaintiff's general statement that she was criticized cannot constitute IIED. Also, there is no indication that the separation of employees from students was discriminatory or intended to elicit emotional harm. Moreover, staff accommodated Plaintiff and permitted her to store her belongings inside when informed of her arm limitations.[3] Finally, not being offered food that was given to employees is not IIED.

### b. Defamation/Libel

Genoa allegedly criticized Plaintiff and told Plaintiff to investigate her questions independently before asking instructors for the answer. Plaintiff's alleged criticism of Plaintiff's note taking is vague and conclusory. In addition, it is not defamatory to provide feedback that the answers to her questions would likely be found within available research materials, and that students should not depend on others for answers. These comments do not bring Plaintiff into disrepute or undermine her integrity. The Court will

---

[3] The Court notes that Plaintiff did not allege that her documented disability included difficulty with her arm, but ADHD and a learning disability that "delays/prolongs writing."

- 13 -

dismiss this claim.

### c. Civil Conspiracy

Plaintiff's allegations against Genoa assert that Genoa had knowledge of pending litigation against the U of A and knew that she was documenting everything because of it. However, there are no allegations that Genoa was working with another party to commit a tort against Plaintiff. Nor is there any suggestion that Genoa's actions or statements were motivated by an agreement with another party to discriminate against her due to her disability. Mere knowledge of her disability and of complaints against the U of A do not create a conspiracy with the university. This claim is unsupported, and Plaintiff has provided no reason to believe amendment would solve the deficiencies.

### d. Discrimination, Retaliation, and Hostile Environment

Plaintiff's discrimination claim fails to allege what services she was excluded from due to her disability. She claims that she was assigned to a rotation she did not prefer but does not state that the placement was motivated by her disability, or that she was entitled to the rotation of her choice but was denied it.

In addition, her separation from employees at lunch does not reasonably lead a fact-finder to conclude the action was discriminatory. She claims she could not eat in the staff lunch room and was not provided the same lunch as staff. But Plaintiff was not staff, and so she has not shown denial of a benefit granted to other non-disabled students.

Furthermore, when informed about her difficulty with her right arm, Genoa permitted Plaintiff to store her belongings in the same area as staff. This cannot show that she was excluded from accommodations because of a disability.

Moreover, there are no alleged adverse actions supporting a retaliation claim. She has not alleged that she was excluded, failed, or unable to successfully complete the rotation because of any of Genoa's discriminatory actions.

Finally, Genoa's alleged actions simply do not create a hostile work environment.

///

///

### e. Conclusion

Plaintiff had two opportunities to amend and added Genoa only in the Second Amended Complaint. Despite amendment, Plaintiff has failed to plead facts to withstand a 12(b)(6) motion. Plaintiff responds to the motion by generally stating that "[m]ore material facts are available" that would support her claims, but she fails to provide a single detail in support. The Court has no indication that Plaintiff is able to add facts that would fix the deficiencies in the Second Amended Complaint. *See Sisseton-Wahpeton Sioux Tribe*, 90 F.3d at 355. The Court finds amendment would be futile, grants Genoa's motion to dismiss, and dismisses Genoa with prejudice.

### 5. ARIZONA BOARD OF REGENTS' MOTION TO DISMISS

Before discussing Plaintiff's claims, the Court will attempt to reiterate the alleged actions in Plaintiff's Second Amended Complaint that are attributed to ABOR. In summarizing the Complaint, the Court has broadly construed which named individuals are U of A employees and subject to liability through ABOR. The Court makes no final determination as to individuals' actual status as university employees.

### a. Factual Summary

#### i. PHPR 875b Class

On August 29, 2016, Plaintiff requested extra time during tests in PHPR 875b. She believed that the time extension applied to a timed SOAP notes assessment–a form that was to be filled out during a class workshop. The graded SOAP notes constituted 38% of Plaintiff's grade. However, her instructors would not give Plaintiff the extra time.

Plaintiff informed U of A Disability Resource Center Representative Diedre Lamb that she was not being provided the time accommodation and that she intended to file a complaint with the U.S. Department of Education. Nonetheless, Plaintiff agreed to take the first SOAP note assessment without accommodation. After the first assessment, however, Plaintiff attempted to contact Lamb to let her know Plaintiff would need the accommodation for subsequent assessments. Plaintiff did not hear back from Lamb until after the second assessment was given on September 13, 2016 and was not provided

accommodations for a third SOAP note assessment on September 27, 2016.

In addition, Lamb suggested Plaintiff wear headphones during exams to help minimize distractions, but her instructors would not allow headphones or earplugs. During one exam, there was a loud banging in the exam room which distracted Plaintiff. As a result, her grades suffered.

### ii. Student Response

Plaintiff claims that during the second assessment students gave her dirty looks. The subsequent day, students told her how to do her SOAP assessments more quickly and generally "harassed" her until Plaintiff threatened to record the students. Later another student stated that there was "no chance for [Plaintiff to get] an A in the class now," however, this student should not have known Plaintiff's grade because she had not disclosed it. (Doc. 74 at 6.) Later, she claims after she reported an incident of academic dishonesty, she again received dirty looks and students avoided her. Because of the harassment, Plaintiff stopped going to classes unless they were required. Her sparse attendance further affected her grade.

### iii. PHPR 811 Class

In March 2017, Plaintiff again for extra time to fill out Clinical Skills/SOAP note assessments in PHPR 811.  When Lamb denied her request, Plaintiff again told Lamb she was going to file a complaint with the U.S. Department of Education. Plaintiff was subsequently required to turn in two assessments before other students. Plaintiff was allowed extra time only for the third and final SOAP note assessment. But, during this final assessment her instructor, Dr. Maryam Fazel, continually interrupted Plaintiff and inaccurately notified Plaintiff of the time that remained. The interruption flustered Plaintiff. As a result, Plaintiff received her lowest grade for the assessment, and ultimately earned a B in the class.

### iv. Other Issues

Plaintiff also alleges that an exam taken at the Disability Resource Center was treated differently than exams taken by other students. In a class with Dr. Patanwala, the

instructor told the students that he would review calculations if the answers were debated. But, unlike tests handed in by students without accommodations, paper calculations by students with disabilities were not saved for later review. As a result, Plaintiff was unable to successfully challenge her answers, and received a B in the class.

In PHPR 807, Plaintiff decided that she did not want to take advantage of the additional time available to her because the testing started two hours before the regular testing time. Yet, she complains that during the test she was required to submit her exam before two students who did not require accommodations.

Hours before another exam, she informed staff that she was concerned that her computer would freeze during the exam and she wanted to use a school computer. Staff told Plaintiff that she would have to either take the exam with her computer and be permitted the extended time, or she could be provided a school computer for the exam but would have to take the exam within the allotted time. Plaintiff decided to use her computer but, as she predicted, it malfunctioned multiple times.

Two days after notifying Lamb that she might file an ADA claim against the university, Plaintiff had difficulty submitting an online quiz. Plaintiff alleges that the D2L system documented that she had attempted the test. She received no credit for it because her instructor claimed there was no record of it.

Plaintiff believes that U of A employee, Dr. Marion Slack, sabotaged her senior project by failing to follow through with finding Plaintiff a project partner, not responding in a timely manner, and giving Plaintiff an extra assignment not required of other students and not listed in the syllabus. But, when Slack finally found a partner for Plaintiff, Plaintiff ignored Slack's email. Similarly, Plaintiff makes various allegations about other instructors' failure to respond to her in a timely manner.

///

///

///

///

### b. Civil Conspiracy

Plaintiff's factual assertions assume that simply because Defendants were aware that she needed accommodations, and because their actions were close in time to Plaintiff's assertion that she would file a claim with the U.S. Department of Education, that ABOR conspired against her to cause emotional distress, to attempt to defame, or to discriminate against her due to her disability. But, to raise a viable claim of conspiracy, a plaintiff must show that a defendant was working together with one or more persons to further some unlawful act. ABOR employees' alleged actions do not suggest there was a coordinated attempt to conspire against Plaintiff. The Court cannot draw this connection from the circumstances presented here.

### c. IIED

Second, the Court cannot find that the problems Plaintiff experienced in her classes constituted IIED. While she was denied accommodations, she successfully passed her classes and has not demonstrated that emotional injury occurred. Given that in two instances Plaintiff was willing to attempt to take her exams/assessments in the allotted time (for one, preferring to take the exam in the set time rather than being inconvenienced by showing up early), the Court cannot find ABOR's denial of extended time for testing was atrocious. In addition, ABOR cannot be held accountable for the dirty looks, comments, and avoidance of other students. But even if it could, the Court would not find that these actions are outrageous.

Plaintiff admits that she failed to raise an IIED claim but asks the Court to allow her to amend to add the elements of IIED. Plaintiff has had two opportunities to amend and provides no grounds to believe amendment would cure the deficiency.

### d. Defamation

Plaintiff claims she was misrepresented in print but does not elaborate. The Court cannot discern any instances of possible defamation. Dirty looks and avoidance are not defamation. Furthermore, written grades are not defamation, even if the scores are contested. Moreover, a general "hostility" claim cannot support Plaintiff's defamation

charge.

Plaintiff states that she is willing to provide the Court with more details if the court desires. The Court previously ordered Plaintiff to specifically state the actions of a defendant and connect those actions to the elements of her claims. Plaintiff's amendments have provided no more clarification about her defamation claim. The Court will not permit this claim to proceed.

### e. Discrimination, Retaliation, and Hostile Environment

Unlike Plaintiff's other claims, the Court finds Plaintiff has stated a viable discrimination claim under the ADA and RA against the ABOR resulting from three encounters with employees of the U of A: (1) for the denial of accommodations in PHPR 875b and (2) PHPR 811, and (3) for the disparate grading procedures in her class with Dr. Patanwala. In these classes, Plaintiff has sufficiently pleaded that (1) she has a documented disability; (2) she is otherwise qualified even without an accommodation; (3) that was excluded from the services sought because of her disability; and (4) that the ABOR is a public entity that receives federal financial assistance. Moreover, Plaintiff has pleaded that ABOR employees were aware of the necessary accommodations and knew that denying such accommodation could be construed as violating a federally protected right but they did so anyway.

The remaining allegations, however, do not demonstrate a causal connection between ABOR employees' actions and resulting discrimination. For instance, Plaintiff may not choose to bypass her time accommodation and then require employees to abide by it. Likewise, it is insincere for Plaintiff to allege she was sabotaged by an instructor for whom she refused to communicate with. Moreover, Plaintiff's accommodation afforded extra time on exams, but not the computer of her choice; and her computer's failure cannot be imputed to ABOR. And insofar as Plaintiff is alleging that she was not provided a school computer, this is more likely a consequence of the availability of computers rather than a covert act of discrimination since Plaintiff informed staff merely hours before the exam. The Court therefore limits the discrimination claim to these three

instances alone.

In these instances, Plaintiff has also successfully pleaded a claim of retaliation. She has sufficiently pleaded that she was disabled as defined under the ADA, she was advocating to receive the accommodations for which she was entitled, she was denied accommodations, and her grades suffered as a result. The Court will deny the motion to dismiss the retaliation claim.

However, a reasonable juror could not find that Plaintiff's allegations rise to the level of creating a hostile environment. The Court will dismiss the hostile environment claim.

### f. Statute of Limitations

ABOR argues that Plaintiff's claims are untimely because Plaintiff's Second Amended Complaint does not relate back to the original Complaint, therefore the statute of limitations was not tolled during this time. First, ABOR argues it was not a named defendant in the initial complaint. Second, even upon amendment, ABOR asserts that Plaintiff has not specified which actions should be attributed to ABOR. Third, ABOR believes that since the Court screened and dismissed the original Complaint it was not on notice that of the claims against it.

The Ninth Circuit explained when an amendment may relate back for the purposes of tolling the statute of limitations. Quoting Federal Rule of Civil Procedure 15(c), the circuit court stated:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

*Martell v. Trilogy Ltd.*, 872 F.2d 322, 323–24 (9th Cir. 1989); Fed. R. Civ. P. 15(c). So, under this rule, claimants who seek amendment to correct the name of the defendant "must satisfy more stringent requirements. In addition to the requirement that the amendment arise out of the same transaction, Rule 15(c) imposes greater notice demands and a showing of lack of prejudice." *Id.*

Plaintiff's Second Amended Complaint arises out of the same set of facts within the original Complaint. In the original, Plaintiff attempted to allege that instructors at the U of A unlawfully failed to provide her accommodations guaranteed under the ADA and her grades suffered from their actions. And, although Plaintiff incorrectly listed the U of A as a defendant, but ABOR should have known that but for the mistake it was the proper defendant. *See Ansel Adams Publ'g Rights Trust v. PRS Media Partners, LLC*, 502 F. App'x 659, 660 (9th Cir. 2012); Ariz. Const. art. 11 §5; Ariz. Rev. Stat. § 15-1625. In fact, the Court's Screening Order noted that only two elements were missing from the original Complaint to raise a successful claim under the RA: naming ABOR as a Defendant and alleging that ABOR receives federal funding or is a public entity. Furthermore, ABOR has made no argument that it would suffer any prejudice should the Court allow the Second Amended Complaint to relate back to the original.

But for Plaintiff's mistake naming the University of Arizona instead of ABOR, ABOR should have been on notice based on the facts alleged that Plaintiff raised claims of violations under the RA and ADA for actions of the U of A's employees. ABOR's defense is not prejudiced by permitting the Second Amended Complaint to relate back. Therefore, Plaintiff's Complaint, filed September 13, 2018, was within two years of the denial of accommodations for the second SOAP notes assessment in PHPR 875b–given on September 13, 2016. *See AR Douglas v. Calif. Dept. of Youth Auth.*, 271 F.3d 812, 823 n.11 (9th Cir. 2001) (RA statute of limitations is equivalent to limitation in state law); *see also Madden-Tyler v. Maricopa Cty.*, 189 Ariz. 462 (Ariz. App. 1997) (RA claim has two-year statute of limitations in Arizona). The Court finds that the Second Amended Complaint relates back to the original and the actions that will proceed are

within the statute of limitations.

### 6. ABOR's Motion to Strike

ABOR's motion asks the Court to strike Plaintiff's Objection to Defendant's Reply as an improper surreply. The rules of procedure allow a motion, response, and reply. LRCiv 7.2. A surreply is permissible only when a party is otherwise unable to answer matters newly raised in the opposing party's reply. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Plaintiff's surreply argues again that ABOR did not confer with her prior to filing a motion to dismiss. Plaintiff raised this matter in her response to the motion to dismiss. Contrary to her contention, her objection indicates that there was some form of conferral prior to amendment addressing the problems with Plaintiff's claims. (Doc. 111 at 2) ("No communication ever occurred *when the movant (ABOR) notified the opposing party (Plaintiff) of the issues* asserted in the motion to dismiss." (emphasis added)).   The Court will grant the Motion to Strike.

Accordingly, IT IS ORDERED:

1. Southern Arizona Veterans Administration and United States Air Force, Davis Monthan Air Force Base's Motion to Dismiss is GRANTED. (Doc. 121.) Federal Defendants and all claims against Federal Defendants are DISMISSED with prejudice.

2. Defendant Banner University Medical Center's Motion to Dismiss is GRANTED. (Doc. 105.) Banner and all claims against Banner are DISMISSED with prejudice.

3. Defendant Genoa Healthcare, LLC's Motion to Dismiss is GRANTED. (Doc. 117.) Genoa and all claims against Genoa are DISMISSED with prejudice.

4. Defendant Arizona Board of Regents' Motion to Dismiss is GRANTED IN PART. (Doc. 99.) Plaintiff's claims against Arizona Board of Regents for IIED, defamation, civil conspiracy, and hostile environment are DISMISSED with prejudice. Arizona Board of Regents must answer Plaintiff's claims of discrimination and retaliation in accordance with in this Order.

5. Defendant Arizona Board of Regents' Motion to Strike Plaintiff's Objection to

Defendant Arizona Board of Regents' Reply is GRANTED. The Clerk of Court shall STRIKE Plaintiff's Objection to ABOR's Motion to Dismiss. (Doc. 111.) Dated this 17th day of December, 2019.

Honorable Raner C. Collins
Senior United States District Judge