**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rose Ann Karam,<br><br>　　　　Plaintiff,<br><br>v.<br><br>University of Arizona, et al.,<br><br>　　　　Defendants. | No. CV-18-00455-TUC-RCC<br><br>**ORDER** |

Before the Court is Defendant Arizona Board of Regents's ("ABOR") Motion for Summary Judgment (Doc. 203), and Plaintiff Rose Ann Karam's Motion for Injunction (Doc. 222), Motion to Strike (Doc. 232), and Second Motion for Status Update (Doc. 238). Plaintiff's Motion for Status Update is granted insofar as this Order provides the status of this case; the Motion for Injunction and Motion to Strike are denied. Defendant's Motion for Summary Judgment is granted, and this matter is dismissed in its entirety.

**I.　FACTUAL AND PROCEDURAL HISTORY**

Plaintiff's original Complaint raised numerous allegations against seventeen Defendants. (Compl., Doc. 1.) After extensive briefing, amendment, and several stipulated dismissals, all Defendants except ABOR were dismissed. (*See* Court's Dec. 17, 2019 Order, Doc. 139.) The Court granted ABOR's Motion to Dismiss Plaintiff's intentional infliction of emotional distress, defamation, civil conspiracy, and hostile environment claims, but allowed Plaintiff's discrimination and retaliation claims against ABOR under Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") to proceed. (*Id.* at 22.) The Court explained that these claims stemmed from three actions:

the denial of accommodations in classes PHPR 875(b) and PHPR 811, and disparate grading procedures in PHPR 875(c). (*Id.* at 19.) The Court, therefore, addresses only the allegations of discrimination and retaliation related to these three classes.

Unless otherwise noted, the undisputed facts are as follows. Plaintiff was a third-year student at the University of Arizona College of Pharmacy between Fall 2016 and Spring 2017. (Pl.'s Response to Mot. Summ. J., Doc. 224 at 2.) Plaintiff suffers from Attention Deficit Hyperactivity Disorder and "learning disabilities including a processing disorder which delays/prolongs writing." (Psychoeducational Evaluation, Ex. A, Doc. 225-1 at 8.) A psychoeducational evaluation recommended Plaintiff receive double time for tests to assist her. (*Id.*)

Plaintiff submitted a request to the Disability Resource Center ("DRC") for additional time on exams and assistance with note taking. (Full Report for Rose Karam ("Karam Report"), Ex. B, Doc. 225-1 at 14.) DRC granted approval for Plaintiff to receive "1.5 extended testing time." (*Id.*) Prior to the classes at issue, in August 2014, DRC confirmed with Plaintiff that Plaintiff requested to take exams in the classroom and utilize the extra time as needed. (*Id.*) DRC explained that Plaintiff must contact her instructors if she wished to receive extra testing time, or that she could contact DRC if she wanted DRC to arrange extended testing time for her. (*Id.*)

Third-year pharmacy students must pass Clinical Skills Assessments ("CSA"), evaluations that help prepare students for the assessment and treatment of patients in real-world situations. (Decl. Amy Kennedy, Ex. A, Doc. 204-1 at 2 ¶ 3.) In addition, third-year students participate in capstone courses, which include the Objective Structured Clinical Examination ("OSCE"). (Decl. Jeannie Lee, Ex. B, Doc. 204-1 at 33, ¶ 3.) Both the OCSE and CSA require the creation of SOAP notes. (*Id.* at ¶ 4; PHPR 875(b) Syllabus, Doc. 225-1 at 26.) SOAP notes are a student's written documentation of subjective and objective observations about a patient, an assessment of the patient's needs, and a plan for treatment. (Decl. Jeannie Lee, Doc. 204-1 at 33, ¶ 3.) In practice, "in a hospital, emergency response unit, or urgent intake scenarios," the pharmacist's SOAP notes must be created "quickly so that a patient's treatment team can have full information about the pharmacy needs and

situation of the patient." (Decl. Kennedy, Doc. 204-1 at 2, ¶ 3.) To simulate real-world practice, the time to finish SOAP notes was limited in Plaintiff's PHPR 875(b) and PHPR 811 classes. (PHPR 875(b) Syllabus, Doc. 225-1 at 26; Decl. Lee, Doc. 204-1 at 33, ¶ 8.) ABOR contends that the time restraints, while stressful, are necessary to prepare students for real-world situations and the pressures inherent with the profession. (Decl. Kennedy, Doc. 204-1 at 2, ¶ 3–5.)

## II. PHPR 875(B)

Plaintiff attended PHPR 875(b), Pharmacotherapeutics, with Professors Amy Kennedy and Shanna O'Connor in Fall 2016. (Decl. Kennedy, Doc. 204-1 at 2, ¶ 2.) The course required CSA evaluations, including SOAP notes. (*Id.* at 2, ¶ 3.) Plaintiff asked Professor Kennedy for additional time on examinations. (*Id.* at 3, ¶ 7.) On August 31, 2016, Professor Kennedy notified Plaintiff that she could receive extra time on exams, but that "the practice CSA and CSA are not eligible for time adjustments/accommodations." (8/31/2016 email Kennedy to Karam, Ex. C, Doc. 225-1 at 18.) On September 2, 2016, Plaintiff asked Diedre Lamb, the Assistant Director of DRC, for clarification as to whether she would be allowed additional time for her SOAP notes. (9/2/2016 email Karam to Lamb, *id.* at 17–18.) Professor Kennedy answered Plaintiff's question the same day, stating that "[s]ince the workshops are designed to get you ready for the CSA, time adjustments are not provided for the SOAP notes." (9/2/2016 email Kennedy to Karam, *id.* at 17.)

Plaintiff again contacted Assistant Director Lamb, saying it would be "problematic if not impossible" for her to complete her SOAP notes without additional time. (9/2/2016 email Karam to Lamb, *id.*) Plaintiff asked once more for a time extension for her September 6, 2016 SOAP notes evaluation. (*Id.*) Assistant Director Lamb then arranged a meeting between Plaintiff and Professor Kennedy to discuss an extension of time for SOAP notes on September 13, 2016, but Plaintiff did not attend. (Decl. Kennedy, Doc. 204-1 at 3, ¶ 10.) Assistant Director Lamb also responded on September 14, 2016, indicating that, after discussing the issue with PHPR faculty and reviewing the curriculum and objectives of the class, an extension of time for both individual and group SOAP notes was not reasonable. (9/14/2016 email Lamb to Karam, Ex. E, Doc. 225-1 at 44.) Assistant Director Lamb noted

that other accommodations were available, stating:

> The workshop is designed to prepare all students for the Clinical Skills Assessment and emulates the fast-paced, clinical setting. It is essential that students respond to the prompt in a timely manner because in the professional setting other medical professionals would rely on your timely assessments to move forward with patient care. There are several accommodations that can facilitate access in completing SOAP notes:
>
> - You may complete SOAP notes in a proctored, private space.
> - DRC will provide head phones or ear plugs to reduce distraction while you complete your SOAP notes.
> - You may use assistive technology to read and respond to the SOAP note prompt.
>
> We believe this outcome maximizes the accessibility of the SOAP note without compromising its essential functions.

(*Id.*) Plaintiff did not receive extra time to complete her SOAP notes in PHPR 875(b). (Decl. Kennedy, Doc. 204-1 at 3, ¶¶ 7–10.) Plaintiff was, however, provided the alternative accommodations for her exam. (*Id.*; 9/14/2016 email Lamb to Karam, Ex. E, Doc. 225-1 at 44.)

On September 14, 2016, Plaintiff claims she completed and attempted to upload a quiz unsuccessfully. (9/14/2016 email Karam to Kennedy, Ex. F, Doc. 225-1 at 48.) Professor Kennedy refused to credit Plaintiff for the quiz, and informed Plaintiff that there was no record she attempted it. (9/14/2016 & 9/28/2016 emails Kennedy to Karam, *id.* at 46, 48.) Plaintiff submitted evidence of the University's D2L computer log system that indicated she started a quiz at 12:55 p.m. and subsequently saved responses for Questions 1 through 5. (Screenshot D2L, *id.* at 49.) Plaintiff claims Professor Kennedy never responded when Plaintiff asked how she could go about verifying that she had finished the exam. (PSOF, Doc. 225 at 4, ¶ 13.)

Despite these challenges, Plaintiff received a "B" grade in PHPR 875(b). (Second Amended Complaint ("SAC"), Doc. 74 at 7, ¶ 17; PSOF, Doc. 225 at 5, ¶ 14.)

### III.   PHPR 811

Plaintiff was also a student in PHPR 811, Advanced Patient Care, in Spring 2017

with Professors Jeannie Lee and Maryam Fazel. (Decl. Lee, Ex. B, Doc. 204-1 at 33, ¶¶ 1–2.) The course utilized the OCSE, which requires the creation of SOAP notes. (*Id.* at ¶¶ 3–4.)

Plaintiff finished one OCSE without time accommodations. (*See* 3/22/2017 email Karam to Lamb, Ex. I, Doc. 225-2 at 9; SAC, Doc. 74 at 4, ¶ 9.) On March 21, 2017, Plaintiff asked Assistant Director Lamb whether Plaintiff could receive a time extension for the remaining SOAP notes. (3/21/2017 email Karam to Lamb, *id.* at 10.) Plaintiff's second OSCE was set for March 27, 2017. (PSOF, Doc. 225 at 5, ¶ 15.) Assistant Director Lamb responded on March 22, 2017, saying she was unsure of the availability of the accommodation, but that generally, "SOAP note exercises/assessments are designed to prepare students for the Clinical Skills Assessment and therefore accommodations for time extensions would alter the purpose of the exercise/assessments." (*Id.*) Plaintiff asserts Assistant Director Lamb later denied accommodations by telephone on March 24, 2017, three days prior to her second OSCE.[1] (*Id.*)

However, on April 21, 2017, Assistant Director Lamb confirmed that Plaintiff could receive extended time for the third OSCE. (4/21/2017 email Lamb to Karm, Ex. R, Doc. 225-2 at 44.) Professor Lee avers that Plaintiff received "additional time for the in-class assignment she had insufficient time for," and for the second and third OSCEs.[2] (Decl. Lee, Doc. 204-1 at 33, ¶ 8.)

Despite the additional time, Plaintiff claims she was distracted during her final OSCE SOAP notes due to a last-minute time change. (PSOF, Doc. 225 at 6, ¶ 17.) Furthermore, Plaintiff claims Professor Fazel interrupted her exam first to inform Plaintiff of the remaining time, and again when she realized the remaining time was 5 minutes less

---

[1] Plaintiff claims that she recorded the conversation with Assistant Director Lamb but the recordings have since been stolen. (PSOF, Doc. 225 at 6, ¶ 15.) Despite Plaintiff's burden of producing more than mere allegations upon summary judgment, because of this allegation the Court, in its discretion, presumes the phone call took place as Plaintiff contends. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(e).
[2] Plaintiff provides no evidence she was unable to have extended time for the second OSCE, nor has she alleged any such evidence is available or has been stolen.

- 5 -

than previously stated.³ (*Id.* at 6–7, ¶ 17.)

Ultimately, Plaintiff received a "B" grade in PHPR 811. (*Id.* at 7, ¶ 18.)

### IV. PHPR 875(C)

Plaintiff attended PHPR 875(c) with Professor Asad Patanwala in the Spring of 2017. (Decl. Asad Patanwala, Ex. B, Doc. 204-1 at 99, ¶ 2.) Plaintiff asked for additional exam time through DRC and received extra time. (*Id.* at ¶ 4.) On February 10, 2017, at 12:22 a.m. the day of an exam, Plaintiff informed Professor Patanwala that her computer had shut down unexpectedly multiple times, and so she was worried about her ability to take the exam on her laptop. (2/10/2017 emails between Plaintiff and Patanwala, Ex. J, Doc. 225-2 at 12.) Professor Patanwala responded that Plaintiff had three options: "make it work, get a zero on the exam, or come to class instead of DRC." (*Id.*) Professor Patanwala added he would not provide extra time if she chose to take the exam in class. (*Id.*)

Plaintiff also claims she was treated differently from other students because her notes from an exam taken through DRC were not reviewed by Dr. Patanwala. (PSOF, Doc. 225 at 8, ¶ 20.) However, Dr. Patanwala's affidavit states that exam notes were neither graded nor reviewed for *any* student. (Decl. Patanwala, Doc. 204-1 at 100, ¶ 11.)

Plaintiff received a "B" grade in PHPR 875(c). (*Id.* at 101, ¶ 14; SAC, Doc. 74 at 12, ¶ 34.)

### V. SUMMARY JUDGMENT STANDARD

A court may grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" when the disputed facts "could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). But a disputed fact is

---

³Plaintiff again claims she had an audio recording of the late start and interruption, but this too has been stolen. (PSOF, Doc. 225 at 7, ¶ 17.) The Court again assumes the veracity of the statement. Here, Plaintiff does not argue that she was not provided appropriate accommodations, rather, she asserts Professor Fazel retaliated against her because her exam time did not start on time and was interrupted. (*Id.*) The Court, therefore, addresses these allegations with her retaliation claim.

- 6 -

only material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In general, a court must consider the evidence while making all inferences in favor of the non-moving party. *Id.* at 255. To obtain summary judgment, the party without the burden of establishing a prima facie case—here ABOR—need only (1) provide "evidence negating an essential element" of a claim or (2) demonstrate that the non-moving party "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party establishes that there is no genuine issue of material fact as to an essential element of a non-movant's claim, then the non-movant must come forth with evidence that there is a genuine disputed factual issue that may change the outcome of the lawsuit in the non-movant's favor. *Anderson*, 477 U.S. at 248, 250. This showing does not have to be unquestionable; however, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 249; *see* Fed. R. Civ. P. 56(e).

a. *ADA and Rehabilitation Act Claims*

The RA and Title II of the ADA require that institutions make reasonable accommodations to their "policies, practices, or procedures" for people with disabilities. *See* 34 C.F.R. § 104.44(a); 28 C.F.R. § 35.130(b)(7). For a plaintiff to establish a prima facie case of a discriminatory denial of accommodations under either the RA or ADA, the plaintiff must show: (1) they are disabled; (2) the program in question "receives federal financial assistance (for the RA claim), or is a public entity (for the ADA claim)"; (3) they are otherwise qualified, even absent the accommodation; and (4) they were "excluded from participation in" or "denied the benefits of the services, programs, or activities of" the entity because of their disability. *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 (9th Cir. 1999). To establish that she is "otherwise qualified," the plaintiff must first show that a reasonable accommodation exists "that would enable her to meet the educational institution's essential eligibility requirements"; then the burden shifts to the defendant to

- 7 -

demonstrate that the accommodation creates "an undue hardship" or "would require a fundamental or substantial modification of its program or standards." *Id.* at 1047.

Here, Plaintiff has established the first three elements of the prima facie case. First, neither party disputes that Plaintiff is disabled. Second, ABOR has not argued that it does not receive federal financial assistance or that it is not a public entity. Third, the undisputed fact that Plaintiff earned a high grade in all three classes despite the lack of accommodations demonstrates she is otherwise qualified to participate in the College of Pharmacy's classes. *See* 42 U.S.C. § 12131. ("The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.")

However, Plaintiff has established neither exclusion nor causation to satisfy the fourth element. It is not enough to simply show denial of an accommodation. *See* 42 U.S.C. § 12132. Rather, exclusion occurs when a disabled person cannot participate in the entity's programs *because* she did not receive the desired accommodations. *See* 28 C.F.R. § 35.130(b)(7) (accommodations required when needed to allow participation in the programs); *Zukle*, 166 F.3d at 1045 (noting where a plaintiff is denied accommodations but still passes the class, she suffers no prejudice). Plaintiff participated an and successfully completed the classes at issue, and was not excluded.

Likewise, causation requires a plaintiff to show that a defendant excluded the plaintiff from participating in the entity's programs either "solely" because of plaintiff's disability (for the RA claim) or "by reason of" their disability (for the ADA claim). 29 U.S.C. § 794; 42 U.S.C. § 12132. Plaintiff not only completed the courses in which she was denied accommodations but earned above average grades. Therefore, she was not "dismissed solely because of her disability" and has not been excluded from participating in the "services, programs, or activities" of the College of Pharmacy. *See Zukle*, 166 F.3d at 1045. Neither has Plaintiff alleged that the classes in which she was denied accommodations caused a dismissal from the College of Pharmacy as a whole.

ABOR has met its burden of showing there is no genuine issue of material fact as

to whether Plaintiff was denied the benefits of the programs offered by ABOR due to her disability. As such, the Court does not reach the question of whether the accommodations were reasonable. The Court's analysis would not change even if Plaintiff was in possession of the evidence that she believes was stolen or if she had obtained any further discovery to which she believes she is entitled.

      *b. Retaliation*

In the three classes at issue,[4] Plaintiff asserts that she was subjected to retaliation after informing Assistant Director Lamb on September 12, 2016 that she "would likely be filing a complaint if they did not comply with [her] accommodations." (*See* PSOF, Doc. 225 at 4, ¶ 11.)[5] Plaintiff's alleged acts of retaliation include when: (1) Assistant Director Lamb failed to contact Plaintiff prior to her second SOAP note assessment in PHPR 875(b), (*id.* at ¶ 12); (2) Professors Kennedy and O'Connor failed to give credit for a September 14, 2016 quiz that Plaintiff had technical trouble submitting, (*id.* at ¶ 13); (3) Professor Fazel started Plaintiff's SOAP notes later than scheduled and interrupted the exam, (*id.* at ¶ 17); (4) Professor Patanwala sent a hostile email to Plaintiff, (*id.* at ¶ 19); and (5) Professor Patanwala refused to review Plaintiff's exam notes but reviewed non-disabled students' notes. (*Id.* at ¶ 20).

A prima facie case of retaliation under the ADA requires the plaintiff to show by a preponderance that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) the adverse action occurred because of the protected activity. *See Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003). While typically retaliation is raised in employment discrimination claims under Title I "rather than discrimination in public services under Title II, the ADA's retaliation provision applies to both titles . . . . The but-for causation standard therefore applies equally to retaliation under Titles I and II." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). In

---

[4] For the reasons stated in Section VII, the Court does not analyze her allegations of retaliation that do not relate to these three classes.
[5] Plaintiff claims she had a recording of this conversation, but it was stolen. Despite Plaintiff's burden of providing evidence beyond her pleadings, the Court assumes the allegations are true for the purposes of this motion. *See Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(e).

addition, the alleged adverse action in a retaliation claim must be "reasonably likely to deter [a person] from engaging in protected activity." *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 & n.5 (9th Cir. 2004).

"If [a plaintiff] establishes a prima facie case, the [plaintiff] will avoid summary judgment unless the [defendant] offers legitimate reasons for the adverse [] action, whereupon the burden shifts back to the [plaintiff] to demonstrate a triable issue of fact as to whether such reasons are pretextual." *Id.* at 849 (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)).

Plaintiff has not shown that Assistant Director Lamb retaliated against her simply because Assistant Director Lamb failed to contact Plaintiff before her exam. Plaintiff alleges she spoke to Assistant Director Lamb September 12, 2016,[6] warning she would be filing a complaint if her accommodations were not granted, and Assistant Director Lamb waited to respond until September 14, 2016, at 3:48 p.m. regarding her SOAP note accommodation, the day after her PHPR 875(b) SOAP note exam. (PSOF Doc. 225 at 4, ¶ 11.) However, Plaintiff does not contest that Assistant Director Lamb arranged a meeting between Plaintiff and her PHPR 875(b) instructor, Professor Kennedy, to discuss her SOAP note extension of time on September 13, 2016, but Plaintiff did not attend. (Doc. 204 at 2, ¶ 6 (citing Decl. Kennedy, Doc. 204-1 at 3, ¶ 10.)) Nor does Plaintiff contest that, despite her absence, Assistant Director Lamb and Kennedy provided Plaintiff with several alternative accommodations for her exam. (*Id.*; 9/14/2016 email Lamb to Karam, Ex. E, Doc. 225-1 at 44.) Thus, Plaintiff's claim that Assistant Director Lamb retaliated against her by not responding prior to her SOAP note exam is disingenuous and does not fully explain the context of Assistant Director Lamb's September 14, 2016 response.

Therefore, Plaintiff has not established a prima facie case of retaliation because she has not shown by a preponderance that any adverse action occurred because she threatened to file a discrimination complaint. Moreover, ABOR has provided a legitimate reason for the late response and Plaintiff has not shown that this reason was pretext.

---

[6] This is another alleged recorded conversation which the Court presumes is true.

- 10 -

Plaintiff next claims Professors Kennedy and O'Connor retaliated against her when they would not give her credit for an exam after Plaintiff had difficulty submitting it through the school's D2L system. (Doc. 225 at 5, ¶ 13.) Plaintiff's professors were aware of her need for testing accommodations. However, Plaintiff provides no evidence—either circumstantial, concrete, or allegedly stolen—that her professors were aware she threatened to engage in the protected activity of filing a discrimination complaint. *See Anderson*, 477 U.S. at 248 ("the non-movant "may not rest upon the mere allegations or denials of [her pleadings . . . ."]). In addition, Professor Kennedy avers that she was unaware of Plaintiff's conversation with Assistant Director Lamb. (Decl. Kennedy, Doc. 204-1 at 4, ¶ 15.) Plaintiff has provided no reason to believe this explanation was pretextual. So, she has not presented the necessary but-for causation to establish a prima facie case of retaliation. *See T.B. ex rel. Brenneise*, 806 F.3d at 473.

Plaintiff also claims Professor Fazel retaliated against her during a SOAP note when Professor Fazel started the exam late, interrupted once to inform Plaintiff there were ten minutes remaining, then interrupted a second time to correct the earlier statement and tell Plaintiff that only five minutes remained. (PSOF, Doc. 225 at 4, ¶ 17.) The Court cannot find that this instance would dissuade a student from filing her discrimination complaint. Time delays often occur—not only in classes, but in life. Moreover, Professor Fazel's warning about the time remaining was a courtesy, and when she realized her error, she corrected it. An adverse action may not involve trivial matters. *Burlinton N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006). Moreover, Plaintiff has not provided any evidence—either circumstantial, concrete, or allegedly stolen—to show that Professor Fazel was aware Plaintiff had expressed her intent to file a discrimination complaint. There is no reason to believe these instances were retaliation for Plaintiff's engagement in a protected activity.

Plaintiff next asserts that she was subject to retaliation because Professor Patanwala was hostile towards her in an email. (*See* PSOF, Doc. 225 at 4, ¶ 19.) Professor Patanwala was aware of Plaintiff's need for testing accommodations. However, Plaintiff provides no evidence—either circumstantial, concrete, or allegedly stolen—that Professor Patanwala

- 11 -

was aware Plaintiff had stated she was going to engage in the protected activity of filing a discrimination complaint. In addition, Professor Patanwala avers that he was unaware of Plaintiff's conversation with Assistant Director Lamb (Decl. Patanwala, Doc. 204-1 at 101, ¶ 15), and Plaintiff has provided no reason to believe this explanation was pretextual. So, Plaintiff has not presented the necessary but-for causation to establish a prima facie case. *See T.B. ex rel. Brenneise*, 806 F.3d at 473.

Finally, Plaintiff claims Professor Patanwala retaliated against her because he refused to review Plaintiff's exam notes but reviewed non-disabled students' notes. (*See* PSOF, Doc. 225 at 4, ¶ 20.) Professor Patanwala provided a sworn statement indicating he did not review or provide partial credit to *any* of his students for their exam notes. (Decl. Patanwala, Doc. 204-1 at 100, ¶ 11.) In addition, Professor Patanwala avers that he was unaware that Plaintiff intended to file a discrimination complaint. (*Id.* at 101, ¶ 15.) Plaintiff has not provided any evidence—either circumstantial, concrete, or allegedly stolen—to show either that Professor Patanwala gave partial credit to other students or that he was aware Plaintiff spoke to Assistant Director Lamb about filing a discrimination complaint. ABOR has given a legitimate reason for Professor Patanwala's actions and Plaintiff has provided no reason to believe this explanation was pretextual. So, she has not established a prima facie case of retaliation.

In summary, none of Plaintiff's claims of retaliation survive summary judgment.

## VI. MOTION FOR INJUNCTION

Plaintiff asks the Court to issue an order to stop ABOR "from deleting and altering Plaintiff's electronic mail in her University of Arizona College of Pharmacy electronic mail account" and to require ABOR to return the "emails in their original form." (Doc. 222 at 1.) She claims several emails were deleted, dates altered, and wording changed. (*Id.*) She states that, in particular, the emails from Dr. Marion Slack, Barbara Collins, and Dr. Stephanie Davis—none of whom are current parties in this matter—are not in their original state. (*Id*. at 1–2.)

A plaintiff seeking a preliminary injunction must show that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm without an injunction, (3)

the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter*, 555 U.S. at 24 ("A preliminary injunction is an extraordinary remedy never awarded as of right").

Plaintiff has not demonstrated that she meets any of the four requirements to obtain a preliminary injunction. Because the Court dismisses Plaintiff's claims, she has not shown she is likely to succeed on the merits and is not entitled to relief. The Court's dismissal on summary judgment does not depend upon any emails that Plaintiff alleges she formerly had possession of and that have now been removed or altered. Moreover, Plaintiff has not detailed what harm is irreparable. Plaintiff had access to and knowledge of the content of those emails but has not illustrated the emails she believes were changed and how the alteration caused harm. The mere "possibility" of harm is insufficient. *Winter*, 555 U.S. at 22. Finally, the discovery deadline has long passed, and summary judgment has been granted, so ordering injunctive relief is inappropriate. *See id.* (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed. 1995)) (the party requesting an injunction must show that without one "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered"). Furthermore, because the Court has already granted summary judgment, an injunction is not in the public interest. Accordingly, the Court will deny the motion.

### VII. MOTION TO STRIKE

Plaintiff's last Motion asks the Court to strike ABOR's reply in support of summary judgment because she disagrees with the facts and legal conclusions argued in the reply and believes they are misrepresentative. (Doc. 232 at 1.) ABOR correctly counters that Plaintiff's motion is an improper sur-reply that offers no viable reasons to strike ABOR's reply. (*See* Doc. 233 at 2.)

"The Court has discretion to permit the filing of a sur-reply. In determining whether


to allow a sur-reply, a district court should consider whether the movant's reply in fact raises arguments or issues for the first time, whether the nonmovant's proposed sur[-]reply would be helpful to the resolution of the pending motion, and whether the movant would be unduly prejudiced were leave to be granted." *Liberty Corp. Capital Ltd. v. Steigleman*, No. CV-19-05698-PHX-GMS, 2020 WL 2097776, at *1 n.2 (D. Ariz. May 1, 2020) (quoting *Sebert v. Ariz. Dep't of Corr.*, No. CV-16-00354-PHX-ROS-ESW, 2016 WL 3456909, at *1 (D. Ariz. June 17, 2016)).

Plaintiff has previously objected to the Court's recharacterization of her motions. (Objection to Order, Doc. 215 at 2.) Yet, no matter how Plaintiff's Motion to Strike is labeled, it functions as an improper sur-reply. Regardless, the Court, in its discretion, has considered Plaintiff's arguments and finds they do not warrant striking ABOR's reply.

Plaintiff contends that ABOR misrepresents case law. (Doc. 232 at 4–10.) The Court has read the cited cases and the parties' arguments about how these cases relate to the instant matter. It is the Court who ultimately decides the appropriate application of the law, not ABOR. However faulty Plaintiff believes ABOR's contentions are, they do not provide a reason to strike ABOR's reply.

Plaintiff also argues that her statement of facts conforms with the Federal and Local Rules of Procedure and functions as her affidavit. (Doc. 232 at 1–2.) Any errors should be excused, she believes, because she is a pro se litigant. (*Id.* at 2.) Plaintiff's statement of facts is not responsive to ABOR's, as required by Local Rule of Civil Procedure 56.1(b)(1). However, regardless of whether her statement of facts conforms with the local rules, it does not change the outcome of the Motion for Summary Judgment. In granting summary judgment, the Court relied upon the *uncontested* fact that Plaintiff passed all classes at issue. Nonetheless, Plaintiff's objection to ABOR's argument is not a reason to strike the reply from the record.

Plaintiff next asserts that her retaliation claim encompassed not only the three classes at issue in the discrimination claim, but all instances of retaliation "by the entire University of Arizona College of Pharmacy/University of Arizona affiliates." (*Id.* at 4.) She claims the limitation to the three instant classes was not specified by the Court's Order.

(*Id.*) Plaintiff ignores the context of the one sentence she quoted. The Court stated:

> *Unlike Plaintiff's other claims*, the Court finds Plaintiff has stated a viable discrimination claim under the ADA and RA against the ABOR *resulting from three encounters with employees of the U of A*: (1) for the denial of accommodations in PHPR 875b and (2) PHPR 811, and (3) for the disparate grading procedures in her class with Dr. Patanwala. *In these classes*, Plaintiff has sufficiently pleaded that (1) she has a documented disability; (2) she is otherwise qualified even without an accommodation; (3) that she was excluded from the services sought because of her disability; and (4) that the ABOR is a public entity that receives federal financial assistance. Moreover, Plaintiff has pleaded that ABOR employees were aware of the necessary accommodations and knew that denying such accommodation could be construed as violating a federally protected right but they did so anyway.
>
> *The remaining allegations, however, do not demonstrate a causal connection between ABOR employees' actions and resulting discrimination.* . . . .
>
> *In these instances*, Plaintiff has also successfully pleaded a claim of retaliation. She has sufficiently pleaded that she was disabled as defined under the ADA, she was advocating to receive the accommodations for which she was entitled, she was denied accommodations, and her grades suffered as a result. The Court will deny the motion to dismiss the retaliation claim.

(Doc. 139 at 19–20 (emphasis added).) The Court then dismissed the Defendants whom Plaintiff now includes in her retaliation claims and *all claims against them*, including Southern Arizona Veterans Administration and Banner University Medical Center. Other Defendants that Plaintiff includes in her retaliation claim upon summary judgment were either previously dismissed—such as Marion Slack (dismissed through amendment, Doc. 13) and Tara Evanko (voluntarily dismissed by Plaintiff, Doc. 70)—or were never a part of this suit. The only retaliation claims against ABOR that the Court allowed to proceed were Plaintiff's claims related to the three classes discussed in this Order. The Court clearly dismissed all other parties and claims against them. Regardless, this is not a reason to strike ABOR's reply.

Finally, Plaintiff claims that to establish her retaliation claim she does not need to show that "the decision makers knew about how the Plaintiff engaged in a Protected

Activity." (Doc. 232 at 11.) As explained in Section V(b), on summary judgment Plaintiff must show but-for her protected action the retaliation would not have occurred. *T.B. ex rel. Brenneise*, 806 F.3d at 473. Because there cannot be a but-for causal relationship between a protected activity and an actor's adverse action when the actor was unaware of the protected activity, her contention is incorrect. Simply because she pleaded sufficiently to withstand a motion to dismiss does not mean her claims proceed past summary judgment if her claims of causation are unsupported. But yet again, ABOR's argument about the elements of retaliation do not justify striking the reply.

Accordingly, IT IS ORDRED:

1) Plaintiff Rose Ann Karam's Second Motion for Status Update is GRANTED. (Doc. 238.)

2) Plaintiff's Motion for Injunction is DENIED. (Doc. 222.)

3) Plaintiff's Motion to Strike is DENIED. (Doc. 232.)

4) Defendant Arizona Board of Regents's (ABOR) Motion for Summary Judgment is GRANTED and this case is DISMISSED in its entirety. (Doc. 203.) The Clerk of Court shall docket accordingly and close the case file in this matter.

Dated this 2nd day of February, 2022.

_____
Honorable Raner C. Collins
Senior United States District Judge